**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| COLIN SUTTLES,<br><br>    *Plaintiff,*<br>  v.<br><br>FACEBOOK, INC.,<br><br>    *Defendant.* | Case No. 1:18-cv-1004<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COLIN SUTTLES ("Plaintiff") brings this action against Defendant, FACEBOOK, INC. ("Defendant") to stop Defendant's practice of sending unsolicited text messages to the telephone of Plaintiff and to obtain redress for Defendant's conduct.  Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## INTRODUCTION

1. Defendant is a social media company. For reasons unknown to Plaintiff, FACEBOOK, INC. sent text messages to Plaintiff's cellular phone encouraging him to go to facebook.com or providing Plaintiff with verification codes assigned to unknown third parties. On information and belief, Defendant and or its agents sent these messages to Plaintiff using automated systems that failed to obey Plaintiff's text message command to "Stop."

2. Defendant repeatedly sent unsolicited text messages to Plaintiff's cellular phone— whose number appears on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3. The TCPA was enacted to protect consumers from unsolicited telephone solicitations exactly like those alleged in this case. In response to Defendant's unlawful conduct,

1

Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text messaging activities to consumers registered on the National Do Not Call Registry ("DNC") and an award of statutory damages to the Plaintiff under the TCPA up to $500.00 per violation, together with court costs, reasonable attorneys' fees, and up to three times actual monetary loss damages (for knowing and/or willful violations).

4.      By sending the text messages at issue in this Complaint, Defendant caused Plaintiff actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text messages, as well as the monies paid to his carrier for the receipt of such text messages.

5.      Plaintiff brings this action against Defendant to secure redress because Defendant willfully violated the TCPA by causing unsolicited text messages to be sent to Plaintiff whose number is registered on the DNC.

## PARTIES

6.      Plaintiff COLIN SUTTLES is a natural person and citizen of Austin, TX.

7.      Defendant FACEBOOK, INC is a corporation organized under the laws of the State of Delaware. Defendant's principal place of business is in Menlo Park, California, and Defendant may be served with process by serving its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

8.      Plaintiff does not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. They will be named, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American*

2

*Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

9.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, Defendant has purposefully availed itself of the protections of Texas law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

13.     Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

16.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

17.     As of October 16, 2013, unless the recipient has given <u>prior express written</u>

<u>consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA

generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m.,
  local time.

- Requires solicitors provide their name, the name of the person or entity on
  whose behalf the call is being made, and a telephone number or address at
  which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a
  recording.

- Prohibits any call or text made using automated telephone equipment or an
  artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an
  artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital
  emergency number, a physician's office, a hospital/health care
  facility/elderly room, a cellular telephone, or any service for which the
  recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line
  business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

18.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed

or prerecorded message call is made to a wireless number bears the responsibility for any violation

of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

19.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

20.     There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

### A. <u>DO NOT CALL VIOLATIONS OF THE TCPA</u>

21.     <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

22.     <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

23.     <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

24.     The Affirmative Defense of Prior Express Consent. Defendant has the burden to prove it has obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed.  47 C.F.R. § 64.1200(c)(2)(ii).

## FACTS SPECIFIC TO PLAINTIFF COLIN SUTTLES

25.     On or about January 17, 2006, Plaintiff Suttles registered his cellular phone number ending in 6767 with the National Do Not Call Registry.

26.     Plaintiff Suttles is the regular carrier and exclusive user of the telephone assigned the number ending in 6767.  The number is assigned to a cellular telephone service for which Plaintiff Suttles is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1).

27.     Plaintiff Suttles began receiving text messages from Defendant on August 8, 2014. Plaintiff immediately texted, "Stop." Defendant did not honor Plaintiff's order to stop sending him text messages and continued to send text messages to Plaintiff.

28.     Within the relevant statute of limitations, Plaintiff continued to receive text messages including on November 25, 2014. Plaintiff Suttles received text messages on his cellular telephone from the numbers 320-99 and 326-65, with brief messages soliciting Plaintiff to update his status, "What are you up to? Reply with a status update to post to Facebook or go to [a

facebook.com link].” Plaintiff sent a responsive text message that simply said “Stop,” and Facebook confirmed text messages were shut off with another text message on March 8, 2015.

29.     Facebook then began sending Plaintiff various confirmation codes that appear to be for unknown third parties, including, “Hannah,” “Abel,” and “Sandra.” Plaintiff does not know individuals by these names or why he is receiving codes that appear directed toward them. These messages began on April 23, 2015 and have continued to the present day.

30.     Plaintiff believes Defendant sent him text messages using an automated system, because Plaintiff received the messages from peculiar numbers, the messages were formulaic, and Plaintiff’s responsive text messages to “stop” did not receive a human-like response.

31.     Plaintiff sent at least two text messages ordering Defendant to “Stop,” but Defendant continued to send Plaintiff text messages.

32.     Plaintiff Suttles has a Facebook account, but never provided his phone number to Defendant.

33.     Plaintiff Suttles never provided Defendant with prior consent or invitation to contact him on his phone via a text message or telephone call.

34.     Nonetheless, Defendant sent text messages to Plaintiff Suttles at least 25 times on his phone during a four-year period, and at least 3 in the past twelve-month period.

35.     Plaintiff Suttles specifically told Defendant to “Stop.” Yet, the text messages continued.

36.     Defendant’s text messages constituted messages that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

37.     Defendant’s unsolicited text messages caused Plaintiff Suttles extreme aggravation and unjustifiably demanded his attention.

38.     Plaintiff's overriding interest is ensuring Defendant cease all illegal telemarketing practices and compensates him for invading his privacy in the manner the TCPA was contemplated to prevent.

39.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls and text messages to individuals whose numbers are registered on the Do Not Call Registry.

40.     Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages, together with costs and reasonable attorneys' fees.

## STANDING

41.     Plaintiff has standing to bring this suit under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### A. INJURY IN FACT

42.     Plaintiff has standing to bring this suit under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.  *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

43.     Plaintiff's injuries must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.  *(Id.)*

44.     For an injury to be concrete it must be a de facto injury, meaning it actually exists.

9

In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls and text messages to his telephone. Such telemarketing calls and text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

45.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

46.     For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7. Furthermore, Plaintiff is the person who pays for the phone, and are the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

**B.  TRACEABLE TO THE CONDUCT OF EACH SEPARATE DEFENDANT**

47.     Plaintiff must allege at the pleading stage of the case facts to show that his injury is traceable to the conduct of Defendant. In this case, Plaintiff satisfies this requirement by alleging that Defendant, and/or agents of Defendant on behalf of Defendant, placed illegal text messages to Plaintiff's phone.

48.     In the instant case, Defendant placed text messages to Plaintiff's wireless/cellular

phone on multiple occasions.

### C. INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION

49.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiff's Prayers for Relief includes a request for damages for each text message sent by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future.

50.     Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims.

### FIRST CAUSE OF ACTION
#### VIOLATION OF TCPA, 47 U.S.C. § 227
#### ("DNC Claim")

51.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

52.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

53.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone

subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

54.     The FCC has long applied its regulations to text messages as well as phone calls. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2003 Order), 18 FCC Rcd. 14,014, 14,115 ¶ 165 (2003).

55.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations and text messages to wireless and residential telephone subscribers such as Plaintiff who registered his respective telephone number on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

56.     Defendant made more than one unsolicited telephone call or text message to Plaintiff within a 12-month period without his prior express consent to transmit such text messages. Plaintiff never provided any form of consent to receive text messages from Defendant and Defendant does not have a record of consent to send text messages to Plaintiff.

57.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

58.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

## ATTORNEY'S FEES

59.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

60.     Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure and requests the attorneys' fees be awarded.

## JURY DEMAND

61.     Plaintiff demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, pray for the following relief:

(a) An award of actual and statutory damages for each and every negligent violation pursuant to 47 U.S.C. § 227(b)(3)(B);

(b) An award of actual and statutory damages for each and every knowing and/or willful violation pursuant to 47 U.S.C § 227(b)(3)(B);

(c) An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities pursuant to 47 U.S.C. § 227(b)(3)(A);

(d) Pre-judgment and post-judgment interest on monetary relief;

(e) An award of reasonable attorneys' fees and court costs; and

(f) All other and further relief as the Court deems necessary, just, and proper.

Dated:  November 27, 2018

Respectfully Submitted,

 /s/ *Jarrett L. Ellzey*                              
Jarrett L. Ellzey

W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**ATTORNEYS FOR PLAINTIFF**